UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

<u>FOR PUBLICATION</u>

-----------------------------------------------------------x
In re

Chapter 7

Frederick C. Meyer,

Case No: 8-11-73179-478

                 Debtor.
-----------------------------------------------------------x
Frederick C. Meyer

Adv. Pro. No.: 8-11-9158-478

                 Plaintiff,

      - against -

United States of America,

                 Defendant.
-----------------------------------------------------------x

# MEMORANDUM DECISION

*Appearances:*

Zinker & Herzberg, LLP
*Counsel for Plaintiff*
By: Jeffery Herzberg, Esq.
278 East Main Street, Suite C
P.O. Box 866
Smithtown, N.Y. 11787

United States Department of Justice
Tax Division - Civil Trial Section
*Counsel for Defendant*
By: Sarah Thomas Mayhew*, Esq.*
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044

The Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before the Court is the Motion for Summary Judgment by Defendant United States of America (the "Government") seeking to have certain tax liabilities owed by the Plaintiff Debtor, Frederick C. Meyer, declared nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B) and (C), and § 523(a)(7) (the "Summary Judgment Motion") and the Cross-Motion for Summary Judgment by the Plaintiff Debtor seeking to have the same tax liabilities declared to be dischargeable (the "Cross-Motion"). The Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and (b). This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I), (J) and (O) and 11 U.S.C. § 523. The following constitutes the Court's finding of fact and conclusions of law as mandated by Bankruptcy Rule 7052.

FACTS

The Debtor filed for chapter 7 relief under the Bankruptcy Code on May 5, 2011 (the "Petition Date") and commenced this adversary proceeding against the Government by filing a complaint on June 15, 2011 seeking a determination of dischargeability of his federal income tax obligations pursuant to 11 U.S.C. § 523 for the 2001, 2002, 2003, 2004, 2005, 2006 and 2007 tax years on the basis that the tax returns were filed more than three years prior to the petition date.

The Government does not have any record of the Debtor filing tax returns for the tax years ending December 31, 1992, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000 and 2001. However, only the tax obligations for the 2001 through 2007 tax years are at issue.

The Government filed its Summary Judgment Motion arguing that (a) the tax liability for the 2001 tax year is nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B) because the Debtor failed to file any tax return for that year; (b) the tax liabilities for the 2001, 2002, 2003, 2004, 2005, 2006, and 2007 tax years are nondischargeable under 11 U.S.C. § 523(a)(1)(C) because

the Debtor willfully attempted to evade or defeat such tax liability via a pattern of failing to file returns coupled with the nonpayment of taxes; and (c) that the interest and penalties for the tax years at issue are also nondischargeable pursuant to 11 U.S.C. § 523(a)(7)(B) to the extent the interest and penalties accrued within the three-year period prior to the Petition Date (i.e., May 5, 2008 to May 5, 2011). The IRS asserts that the total amount of owed tax equals $163,713.43 with interest continuing to accrue from the Petition Date. With respect to the tax penalties, the Government asserts that the total amount of late filing penalties equals $7,234.40, with interest accruing from May 8, 2008, and the total amount of the failure to pay penalties equals $11,627.68 with interest accruing from May 5, 2008. Accordingly, the total of all tax penalties accrued during the three-year period prior to the Petition Date total $18,862.08, with interest accruing thereon.

The Debtor argues in his Cross-Motion that the tax liabilities for the years at issue are dischargeable because (1) he mailed his 2001 tax return to the Internal Revenue Service and it is the Government's burden to ask for the 2001 tax return if it did not receive it when it received his other tax returns, and (2) he did not willfully attempt to evade or defeat any of his tax liability with respect to the tax years at issue because he made an oral offer to pay a substantial portion of the tax liability.

The Debtor acknowledges that he did not make any payment of taxes for the 2001 through 2007 tax years. The issues before the Court are whether the Debtor is deemed to have filed his federal income tax return for the 2001 tax year and whether the Debtor's conduct demonstrates an intent to wilfully evade or defeat his tax obligations to the Government.

<u>DISCUSSION</u>

1.      General.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure as made applicable by

Bankruptcy Rule 7056, the Court may award summary judgment "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."

When no genuine triable issues of material fact exist, the moving party is entitled to

judgment as a matter of law and summary judgment should be granted. *Knight v. U.S. Fire Ins.*

*Co.*, 804 F.2d 9, 11 (2d Cir. 1986). The mere production of some evidence in support of the

opposing party's position will not justify denial of a summary judgment motion, unless the court

finds that there is evidence upon which a jury can properly proceed to find a verdict for the party

opposing the motion. *American v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). Instead, the opposing party must "set forth specific facts showing that there

is a genuine issue for trial." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). A court must

always "resolve ambiguities and draw reasonable inferences against the moving party." *Knight v.*

*U.S. Fire Ins. Co.*, 804 F.2d at 11. However, the opposing party may not rely upon "mere

speculation or conjecture as to the true nature of the facts to overcome a motion for summary

judgment." *Id.,* 804 F.2d at 12.

Both parties have acknowledged that there is no issue of material fact that has not been

made a part of this proceeding which would require an evidentiary hearing. Therefore, the Court

finds that there are no issues of material fact and that summary judgment is appropriate.

3

      *A.     Whether Taxes for the 2001 Tax Year is Nondischargeable pursuant to Section 523(a)(1)(B).*

The Government argues that the 2001 tax liability should be excepted from discharge because the Debtor failed to file his tax return for that year. Section 523(a)(1) of the Bankruptcy Code provides in pertinent part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
> > (1) for a tax or a customs duty –
> > > . . .
> > > (B) with respect to which a return, or equitable report or notice, if required --
> > > > (i) was not filed or given; or
> > > > (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
> > > (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax . . . .

11 U.S.C. § 523(a)(1)(B)(i).

The Government bears the burden of production with respect to the imposition of a tax which requires the Government to produce sufficient evidence that it is appropriate to impose a tax. *Tesoriero v. Commissioner*, No. 18950-10, T.C. Memo 2012-261, *5 (T.C. 2012).

Here, the Government has produced a certified record of the tax transcript for the Debtor showing that no tax return was filed for the 2001 tax year and that a substitute tax return was prepared by the Government on October 9, 2007. Thus, the IRS has met its burden of production of sufficient evidence to establish that it is appropriate to impose a tax upon the Debtor based upon the substitute tax return.

4

The Debtor now bears the burden of proving either timely filing of a federal income tax return or reasonable cause and lack of willful neglect. *Id.* There is only a presumption of delivery of a tax return if the taxpayer sends the tax return via certified or registered mail with return receipt requested along with proof that the taxpayer properly addressed the mailing. *Id.*, T.C. Memo 2012-261 at *7; *Estate of Leonard A. Wood v. Commission or Internal Revenue*, 92 T.C. 793, 798 (T.C. 1989)(stating that "if taxpayers mail by registered or certified mail, they are assured of having prima facie evidence of delivery by presenting the postmarked receipt"). The Debtor has not produced any such evidence.

The Debtor argues that he filed the 2001 tax return when he filed his 2002 to 2005 tax returns. The Debtor relies upon a copy of a typed tax return for the 2001 year he produced to the Government during discovery in this proceeding as evidence that the 2001 tax return was filed with his other tax returns. Unlike the 2001 tax return in the Debtor's possession, the tax returns filed with the Government for the 2002 to 2005 tax years were handwritten. The Debtor had no recollection of who prepared the 2001 tax return or whether he had a tax preparer for the 2001 tax year. However, the fact that the Debtor has a copy of a tax return for 2001 in his records is not evidence that he actually filed the tax return. He has not produced any evidence that the tax return was sent to the Government via certified or registered mail with return receipt requested. While the Debtor argues that he should not be expected to keep records for ten years, to the extent the Debtor alleges that he filed the 2001 tax return along with the 2002 to 2005 tax returns in 2007, the actual filing would have been less than six years prior to the petition date and it would not have been unreasonable to expect the debtor to keep tax records for that period. The tax court has cautioned taxpayers that "when a return is not sent by registered mail or certified

5

mail, it is the taxpayer, not the Government, that bears the risk of nondelivery." *Tesoriero*, T.C. Memo 2012-261 at * 8 (citing *Walden v. Commissioner,* 90 T.C. 947, 951(1988).

The Debtor further argues that the 2001 tax liability should be discharged because the Government should bear the responsibility for failing to ask the Debtor for his 2001 taxes return when it received the Debtor's 2002 to 2005 tax returns. The Court notes that our federal tax system is one of self-assessment and self-reporting. "The tax laws in this country require taxpayers to calculate their income tax liability, and to report the amount owed in a timely manner and to pay the tax liability so as 'to spare the tax authorities the burden of trying to reconstruct a taxpayer's income and income-tax liability without any help from him.'" *Casano v. Internal Revenue Service et. al (In re Casano)*, 473 B.R. 504, 507 (Bankr. E.D.N.Y. 2012) (quoting *In re Payne*, 431 F.3d 1050, 1057 (7th Cir. 2005)). The Government should not be required to assume that if tax returns for certain years were filed that the taxpayer meant to file returns for other years as well, especially when the Debtor did not and still has not filed any tax return for the 1992 through the 2001 tax years.

Moreover, on the same date the substitute tax return was prepared, the Government notified the Debtor by letter (the "30 Day Letter") of the proposed tax liability computed by the Government under the substitute tax return based upon information provide by third parties such as employers, banks or other financial institutions. When a taxpayer fails to respond to the 30 Day Letter, the Government sends a Notice of Deficiency to the taxpayer notifying the taxpayer that unless a response is received within 90 days, the Government would assess the calculated amount of the tax obligation, including tax, penalties and interest, against the taxpayer. Having received no response from the Debtor, the Government sent a Statutory Notice of Deficiency to

the Debtor for the 2001 tax year on January 30, 2008. On July 7, 2008, the Government assessed

taxes in the amount of $2,960, interest in the amount of $1,695.17, an estimated tax penalty of

$117.14, a failure to file penalty of $666, and a failure to pay penalty of $740. According to the

2001 tax transcript, on September 9, 2008, the Government issued a notice of its intent to levy.

The Debtor took no steps to challenge the Government's actions. The Government has collected

$3,491.66 through levies which paid the tax portion of the liability but not the interest and

penalties. The Debtor received notice from the Government on several occasions that it did not

receive any tax return for the 2001 tax year. The Debtor had ample opportunity to contest the

Government's assertion that the Debtor never filed the 2001 tax return prior to the Government's

assessment of the Debtor's tax liability for that year and the Debtor did not do so. Accordingly,

the Debtor's arguments are misplaced and the Court finds that the Debtor failed to file a federal

income tax return for the 2001 tax year and any outstanding tax obligation for that year would be

nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B).


       B.      *Whether Taxes for the 2001 to 2007 Tax Years are Nondischargeable pursuant to Section 523(a)(1)(C).*

As discussed above, the Government did not receive any tax return for the 2001 tax year

and the Government received hand-written tax returns for the 2002 through 2005 tax years in

one envelope on March 27, 2007 after the filing deadlines had passed. The Debtor's tax return

for the 2006 year was deemed timely filed on April 15, 2007. The Government received the 2007

tax return on April 21, 2009 after the filing deadline had passed.

A summary of the Debtor's adjusted gross income and taxes assessed for the 2001

through 2007 tax years is set forth as follows:

| Tax Year | Date Return Filed | Date of Assessment | Adjusted Gross Income | Tax Assessed |
|---|---|---|---|---|
| 2001 | N/A | 7/7/2008 | $21,031.50 | $2.960.00 |
| 2002 | 3/27/2007 | 7/2/2007 | $62,549.00 | $11,882.00 |
| 2003 | 3/27/2007 | 5/7/2007 | $129,600.00 | $33,822.67 |
| 2004 | 3/27/2007 | 6/25/2007 | $127,552.00 | $37,410.85 |
| 2004 | | 9/22/2007 | | $319.44 |
| 2005 | 3/27/2007 | 6/25/2007 | $28,991.00 | $101.00 |
| 2006 | 4/15/2007 | 6/25/2007 | $51,375.00 | $1,106.00 |
| 2006 | 4/20/2009 | | | $4,818.00 |
| 2007 | 4/21/2009 | 6/1/2009 | $114,722.00 | $32,153.00 |

As noted above, the Debtor did not make any payment of his tax obligations with respect to the tax returns at issue. As of the Petition Date, the Debtor owes a total of $163,713.43 in taxes with respect to the tax years at issue and while there is no underlying tax liability outstanding for the 2001 tax year as a result of credit being applied from the Government's collection actions, there are still penalties owed for that year.

The Government argues that the tax liabilities for the 2001 through 2007 tax years should be excepted from discharge under 11 U.S.C. § 523(a)(1)(C) because the Debtor willfully attempted to evade or defeat his tax liabilities for those years. The Government must show by a preponderance of the evidence that the tax liabilities should be excepted from discharge. *In re Epstein*, 303 B.R. 280, 287 (Bankr. E.D.N.Y. 2004).

The Court of Appeals for the Second Circuit has held that under § 523(a)(1)(C), the "willfulness exception consists of a conduct element (an attempt to evade or defeat taxes) and a *means rea* requirement (willfulness). *In re Tudisco*, 183 F.3d 133, 136 (2d Cir. 1999). Courts

8

have found that nonpayment of tax accompanied by other conduct such as the concealment of assets or income, a pattern of failure to file tax returns, or creation of shell entities to hold assets is sufficient to establish conduct seeking to evade or defeat taxes. *Id.*, 183 F.3d at 137; *In re Epstein*, 303 B.R. at 286.

With respect to *mens rea* element, the Second Circuit requires that the debtor's conduct be undertaken "voluntarily, consciously or knowingly, and intentionally." *Tusdisco*, 183 F.3d at 137 (quoting *Dalton v. Internal Revenue Service*, 77 F.3d 1297, 1301 (10th Cir. 1996)). In the absence of direct proof of intent, courts look to circumstantial evidence to determine the *mens rea* element which may include evidence outside the tax years at issue "if sufficiently related in time and character to be probative. *Epstein*, 303 B.R. at 287 (quoting *In re Birkenstock*, 87 F.2d 947, 951 (7th Cir. 1996)). Courts have considered conduct such as wilfully failing to file tax returns in a timely manner in order to delay the collection of those taxes, and attempts to use such delays in order to discharge the tax liabilities in bankruptcy. *Epstein*, 303 B.R. at 287-88; *In re Colish,* 289 B.R. 523, 533 (Bankr. E.D.N.Y. 2002). A debtor can also be held to have willfully evaded his taxes "where he had the wherewithal to pay his tax obligations but chose to apply his income to discretionary expenses such as private education for his children and financial support to his family members." *In re Colish*, 289 B.R. at 535.

1.    Conduct with respect to Attempts to Evade or Defeat Taxes.

In this case, the Debtor is an attorney who holds a Juris Doctor degree from St. Johns School of Law and has practiced law in New York for more than 35 years, specializing in real estate and trusts and estate law. He is still licensed to practice law. The Debtor has admitted that

he is aware of his obligation to timely file tax returns and to timely pay the taxes owed.

The Government has established by preponderance of the evidence that the Debtor not only failed to pay the taxes assessed with respect to the 2001 through 2007 tax years but also engaged in conduct evidencing an attempt to evade or defeat the payment of taxes. The Debtor has a pattern of not filing tax returns or filing the returns late. The Debtor failed to file tax returns from 1992 to 2001 and filed late returns for 2002 through 2007 with the tax return for the 2006 year being the only year that the Debtor timely filed a tax return.

The Debtor had a practice of keeping assets in the name of his family members, including his two younger children, or in the name of corporate entities he established to avoid having assets in his name. From 1979 through 2009, Debtor operated a real estate title abstract company in the Hamptons region of Suffolk County, New York which was first incorporated as Suffolk Abstract Co., Inc. ("Suffolk Abstract"). Debtor was the only investor in Suffolk Abstract. Suffolk Abstract was subsequently reorganized and renamed as B.A.V. Inc., d/b/a/ Suffolk Abstract. The shareholders of B.A.V., Inc. were his second wife, Barbara Ann Vilsack, and their two young children. The shareholders did not provide any financial contributions for their interest in B.A.V., Inc. and the Debtor was B.A.V., Inc.'s sole corporate officer and employee. B.A.C., Inc. did not keep any bookkeeping ledgers and the Debtor testified at his deposition that he did not reconcile his records to determine who paid and who did not pay for his services.

The Debtor did not have any personal bank accounts. He had a checking account for B.A.V., Inc., and a checking account and an IOLA account for his law practice. Debtor would pay for some of his personal expenses through his business checking accounts.

The Debtor's residence is located in Hampton Bays, New York (the "Residence"). The

Debtor purchased the Residence in 1980 and made all the mortgage payments on the Residence. Title to the Residence was originally held in the names of the Debtor and his first wife, Marie. The Debtor's marriage to Marie ended in January of 1987 and the Debtor married Barbara in May of 1987. Some time after 1984 and prior to 1987, title to the Residence was held by POSSLQ, Inc. with the shares in POSSLQ, Inc. held by the Debtor and Barbara. Title was then briefly transferred to the Debtor and Barbara as tenancy by the entirety during the period of February to June of 1989 in order to refinance the mortgage. After the refinancing was completed in June of 1989, title to the Residence was transferred back to Barbara alone. Barbara left in 1999 and obtained a divorce in 2010. In 2004, title to the Residence was then transferred to the Debtor's sister as custodian under a trust for the benefit of the Debtor's younger children after Barbara had sued for divorce. Title to the Residence is presently being litigated in state court.

The Debtor has a Pearson 419 sailing ketch which was purchased in 1992. The boat was held in a corporate name with his younger children, then ages 1 and 4 at the time, as shareholders of the corporation. Debtor was the main sailor in the family as the Debtor's children had no interest in sailing. The Debtor sailed the boat and paid for all the expenses of the boat during the tax periods at issue. Although the boat was awarded to Barbara in the divorce in 2010, Barbara has not taken possession of the boat and the Debtor still has access to the boat.

The Debtor also has two 1983 Mercedes-Benz 380 SL vehicles, one of which was purchased for Barbara as a wedding present and the title was originally held in Suffolk Abstract's name, and the other was purchased for his youngest daughter and the title is in her name. In June or July of 2007, the Debtor purchased a used 2001 Ford Excursion for $19,500

and had the entire undercarriage rebuilt. Title to the Excursion is held by Sea Devils, Ltd., a real estate management company that the Debtor was going to start.

Given that the Debtor had little assets in his personal name, the Government had limited assets they could levy against to collect on the tax liability owed by the Debtor. The Government resorted to locating the Debtor's clients in order to collect against the Debtor's receivables. Even then, the Government was only able to collect less than $6,000. While the Debtor argues that it is the actions of the Government in seeking to levy his receivables that have resulted in the cessation of his business and hindered his ability to earn income, the Court finds that it is the Debtor's conduct that has necessitated the Government's levy of the Debtor's receivables directly from his clients. Moreover, the Debtor's arguments in this regard constitute a red herring as the Government's collection actions which took place during 2008 to 2011 have no relevance to the Debtor's long-standing practice of not having any assets held in his own name and in failing to file tax returns prior to 2007 and failing to pay any portion of his tax obligations when he did file some of his tax returns in 2007.

      2.     Conduct with respect to *Mens Rea*.

The Government also has demonstrated that the Debtor's conduct in evading or defeating his tax obligations was wilful. During the tax years at issue, the Debtor had earned income but applied his income to discretionary expenses for himself and his children rather than making any payment on his tax obligations. In 2002, the Debtor spent $50,000 to build an extra room at the Residence because the head room in the attic bedroom that his tall son occupied was insufficient for him. The youngest daughter had two adjoining rooms on a lower floor that would have

provided sufficient head room for the son but the Debtor did not want to put his son in one of the adjoining rooms. The Debtor does not explain why the children could not have switched rooms or a dividing wall to separate the adjoining rooms could not have been built at a much lower cost.

In 2003 or 2004, the Debtor purchased a secondhand jet ski for his son which he stored at home. He also purchased custom-made skate board boots for his son for about $300. In 2003 and 2004, the Debtor belonged to the Southampton Yacht Club and paid dues in the amount of $400 a year. The Debtor was also a member of the Elks and the Hampton Bays Rotary Club paying $75 a year in dues for the former and $95 a year in dues for the latter.

During the years at issue, the Debtor's youngest daughter took horseback riding lessons which the Debtor paid for. The Debtor often took his daughter to horse meets and shows. She would perform between 20 and 30 local shows a year and at least one national competition a year though the Debtor testified that the costs of transporting the horses and the farrier costs were borne by others.

The Debtor argued that he had a shortage of funds to pay his tax obligations because he was involved in three divorce cases with Barbara, that Barbara took all the moneys out of his bank account when she departed the Residence, that he had to pay for the cost to raise his children, and to pay for medical and psychological treatment for two of his children. However, the Debtor has not provided any evidence to substantiate any of his arguments or the amount or proportion of his income that went towards necessary as opposed to discretionary expenses.

Debtor had more than $100,000 at the time he filed the tax returns in 2007 but he purposefully did not include any payment of his income tax obligation when he filed his tax

returns for the years at issue.

The Debtor argues that his conduct in failing to pay taxes was not wilful because he made an offer to pay $85,000 of the principal balance of his federal income tax liability. The Debtor's offer was a verbal offer made in one telephone conversation with an Internal Revenue Service agent in 2007 to pay only the taxes that were owed but not any interest and penalty with respect to those taxes. The offer was not accepted. Rather, the Debtor argued that the Internal Revenue agent threatened him. The Debtor did not make any written offer to the Government nor sought to contact anyone else at the Internal Revenue Service to pursue the issue of payment. As an attorney familiar with legal practice, he should have known that oral discussions subject to dispute would be better served by a writing reflecting what the Debtor now represents took place approximately six years ago, and is not supported by any evidence.  The Court questions the sincerity of the Debtor's one time offer to pay his taxes when the Debtor took no further actions nor made any serious and persistent effort to resolve his outstanding tax liability when he was cognizant of his obligation to pay those taxes knowing that the unpaid tax liabilities would continue to accrue interest and penalties. The Court finds that the Debtor's conduct demonstrates a conscious and intentional decision to not pay his outstanding tax liability for the tax years at issue. Moreover, the Debtor's conduct appears to be aimed at preserving his ability to seek a discharge of his tax liabilities in bankruptcy under 11 U.S.C. § 523(a)(1)(B) rather than a willingness to pay them when he voluntarily and consciously fails to file his tax returns and pay his tax liabilities.

In light of the totality of the circumstances and the Debtor's conscious and wilful conduct in attempting to evade and defeat his federal income tax liability as described above, the Court

14

finds that the Debtor's tax obligations, if any, for the 2001, 2002, 2003, 2004, 2004, 2006, and

2007 tax years are excepted from discharge pursuant 11 U.S.C. § 523(a)(1)(C).


II.     Non-Dischargeability under 11 U.S.C. § 523(a)(7).

The Government also seeks a determination that the tax penalties with respect to the 2001

through 2007 tax years are not dischargeable pursuant to 11 U.S.C. § 523(a)(7) to the extent such

penalties accrued during the three-year period prior to the Petition Date (i.e., May 5, 2008 to

May 5, 2011)(the "Three Year Look Back Period"). Under the United States Internal Revenue

Code, the Government assesses various penalties against a taxpayer for failure to timely file a tax

return, failure to make estimated tax payments as the taxes were accruing, and for failure to pay

the taxes. 26 U.S.C. §§ 6651 and 6654.

Pursuant to 11 U.S.C. §523(a)(7), a discharge under 11 U.S.C. § 727 does not discharge

an individual debtor from any debt:

> (7)     to the extent such debt is for a fine, penalty, or forfeiture payable to and
> for the benefit of a government unit, and is not compensation for actual
> pecuniary loss, other than a tax penalty –
> (A)     relating to a tax of a kind not specified in paragraph (1) of this
> subsection; or
> (B)     imposed with respect to a transaction or event that occurred before
> three years before the date of the filing of the petition.

11 U.S.C. § 523(a)(7). Thus, to the extent a tax penalty associated with a nondischargeable

income tax obligation pursuant to 11 U.S.C. § 523(a)(1) accrued within the Three Year Look

Back Period, then the penalty is also excepted from discharge.

The Government assessed a failure to file penalty with respect to the 2002, 2003, 2004,

2005 and 2007 tax years because the Debtor failed to file his tax returns for those years in a

timely manner. In addition, the Government assessed penalties against the Debtor for failure to pay his tax liabilities for the 2001 through 2007 tax years. A portion of those penalties accrued during the Three Year Look Back Period. Because the Court has found the Debtor's underlying tax obligations for the 2001 through 2007 tax years to be nondischargeable, those penalties for the Debtor's failure to file or failure to pay that accrued during the Three Year Look Back Period are also nondischargeable pursuant to 11 U.S.C. § 523(a)(7).

<u>CONCLUSION</u>

Based upon the foregoing, the Debtor's tax obligation for the 2001 tax year, if any, is nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(B) and the Debtor's tax obligations, if any, for each of the 2001, 2002, 2003, 2004, 2005, 2006 and 2007 years are also nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). In addition, any tax penalties with respect to the Debtor's nondischargeable tax liabilities for the tax years at issue which have accrued during the Three Year Look Back Period are also nondischargeable pursuant to 11 U.S.C. § 523(a)(7).

Accordingly, the Government's Summary Judgment Motion is granted and the Debtor's Cross Motion is denied.

An Order pursuant to this Memorandum Decision will be entered separately.



**Dated: Central Islip, New York**
**March 7, 2013**

**Dorothy Eisenberg**
**United States Bankruptcy Judge**

16